# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| BOBBY BAILEY, JR. AND ROBERT O. SMITH, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 3:15-cv-0025 |
| v. | ) | Judge Aleta A. Trauger |
| | ) | |
| U.S.F. HOLLAND, INC. & TEAMSTERS LOCAL UNION 480, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

On December 12, 2013, the plaintiffs filed this action in Davidson County Circuit Court, alleging claims under Tennessee law. On January 9, 2015, after the plaintiffs amended their Complaint to add a Title VII claim, the defendants removed the case to this court. The plaintiffs seek to return to state court. To that end, they have filed two motions now pending before the court. First, they have filed a Motion for Leave to Amend under Rule 15(a) to "delete" the Title VII claim (Docket No. 7), to which the defendants have filed Responses (Docket Nos. 11 and 13) stating that they do not oppose the motion, provided that the Title VII claims are dismissed with prejudice. Second, the plaintiffs have also filed a Motion to Remand to State Court (Docket No. 9), to which the defendants have filed Responses in opposition (Docket Nos. 12 and 14). The plaintiffs have filed a combined Reply as to both motions (Docket No. 19), and defendant Teamsters Local Union 840 has filed a Sur-Reply with respect to the Motion to Remand (Docket No. 22).

For the reasons stated herein, the Motion to Amend will be granted, the Title VII claim will be dismissed with prejudice, and, once the plaintiffs file a Second Amended Complaint, the

1

Motion to Remand will be granted.

## BACKGROUND

The plaintiffs, Bobby Bailey, Jr. and Robert O. Smith, are two employees of defendant U.S.F. Holland, Inc. ("Holland"), a Michigan trucking company with a terminal in Nashville, Tennessee. Defendant Teamsters Local Union 480 (the "Union") represents hourly workers at the Nashville terminal and has a principal place of business in Nashville.[1] This case is the second case brought by Bailey and Smith related to discrimination at the Nashville terminal.

**I.     *Bailey I***

In June 2005, Bailey and Smith brought a lawsuit against Holland, alleging hostile work environment and race discrimination claims under the Tennessee Human Rights Act ("THRA") and Title VII. *See Bailey, et al.*, *v. USF Holland, et al.*, 3:05-cv-435 (M.D. Tenn. filed June 3, 2005). Following a bench trial, this court granted judgment to Bailey and Smith, holding that they had been subjected to a racially hostile work environment (including repeated derogatory references to them as "boy" by white employees, racist graffiti, nooses, and racially motivated acts of vandalism) and that Holland had failed address these issues. (*See Bailey I* Docket Nos. 163 and 164 (2007 WL 470439 (M.D. Tenn. Feb. 8, 2007)). In a published opinion, the Sixth Circuit affirmed. *See Bailey v. Holland*, 526 F.3d 880 (6th Cir. 2008).

**II.     Alleged Events Leading to *Bailey II***

In their Amended Complaint in this case, the plaintiffs allege that Holland permitted the racially hostile work environment to persist following the *Bailey I* judgment. The plaintiffs allege that multiple co-workers, including one co-worker named "Hassell," continued to harass them by using "boy" in various ways and by whistling at them like one would whistle to a dog,

---

[1] It is not clear from the Amended Complaint whether the plaintiffs are members of the Union.

as if to say "here boy." The plaintiffs allegedly complained to management several times, but no action was taken. Finally, after Bailey had an altercation with Hassell about the issue and reported Hassell to a black supervisor, Holland investigated the matter. During an investigatory meeting with Hassell and several management officials, Hassell made racist statements, including referring to Bailey as a "black bastard." On an unspecified date after this incident, Holland terminated Hassell.

On May 6, 2012, the Union filed a grievance on behalf of Hassell to protest his termination. According to the plaintiffs, Holland and the Union entered into a corrupt bargain of sorts: as part of an agreement with the Union to "get this thing put away as soon as possible,"[2] Holland put up only nominal opposition to Hassell's discharge at a grievance hearing before a Joint Area Grievance Committee. Presumably in light of Holland's token opposition, the grievance committee reinstated Hassell. Upon being reinstated, Hassell resumed harassing the plaintiffs by whistling at them like dogs, while other employees "smirked" at this behavior.

On an unspecified date, the plaintiffs filed EEOC charges against Holland relating to the post-*Bailey I* harassment. After receiving the charges, Holland conducted some type of investigation through a retained attorney. At an unspecified point after initiating that investigation, Holland terminated Hassell again. The plaintiffs allege that "[i]t is believed that Defendant Union filed a grievance once again to reinstate Hassell." According to the plaintiffs, Holland has refused to respond to the grievance unless both the plaintiffs and the Union agree that Holland's attorney-client privilege would not be waived by disclosing its attorney's

_____

[2] The Amended Complaint includes this quote without attribution. The court notes that the Amended Complaint contains limited (albeit sufficient for pleading purposes) detail concerning the chronology of events and the defendants' respective roles in those events.

investigative report. The plaintiffs allege that Holland's justification for conditionally refusing to participate is not genuine and, in fact, is merely a pretext to avoid opposing Hassell's grievance.

### III.     *Bailey II* **(This Lawsuit)**

On December 12, 2013 (one year from the date of Hassell's reinstatement), the plaintiffs filed this lawsuit against the Union and Holland in Davidson County Circuit Court, asserting claims for discrimination and retaliation under the THRA.

Holland filed an Answer to the Complaint, which, among other things, stated as an affirmative defense that the plaintiffs' claims are preempted by the Labor Management Relations Act ("LMRA"). The Union filed a motion to dismiss under Tenn. R. Civ. P. 12.02, which the Circuit Court denied in a summary order. In addition to ruling on that motion, the Circuit Court oversaw discovery-related conferences, issued a scheduling order, and ruled on the plaintiffs' request for leave to amend their complaint.

On December 12, 2014, the plaintiffs received leave to file an Amended Complaint, which added claims against both defendants under Title VII for discrimination, retaliation, and hostile work environment. The Amended Complaint also added one substantive paragraph, in which the plaintiffs allege that the Union created a hostile work environment by "filing a grievance and pursuing a grievance" on behalf of Hassell, thereby causing or attempting to cause Holland to violate the THRA and Title VII.[3] The plaintiffs appear to base their THRA claims

---

[3] Although the court has not located the EEOC charge or a Notice of Right to Sue in the Circuit Court record or in the record before this court, the court presumes that the plaintiffs timely filed their Amended Complaint upon receiving a Notice of Right to Sue letter from the EEOC. The defendants do not challenge the Title VII claim for failure to exhaust administrative remedies or for untimeliness.

against the Union on Tenn. Code Ann. § 4-21-402, which makes it unlawful for a labor organization to "[c]ause or attempt to cause an employer to violate [the THRA]." Tenn. Code. Ann. § 4-21-402(3).[4] The plaintiffs appear to base their Title VII claims against the Union on 42 U.S.C. § 2000e-2(c), which similarly makes it unlawful for a labor organization "to cause or attempt to cause an employer to discriminate against an individual in violation of this section."[5]

---

[4] In full, THRA § 4-21-403 reads:

> It is a discriminatory practice for a labor organization to –
>
> (1) Exclude or expel from membership, or otherwise to discriminate against a member or applicant for membership because of race, creed, color, religion, sex, age or national origin.
>
> (2) Limit, segregate, or classify membership or application for membership or to classify or fail or refuse to refer for employment on the basis of race, creed, color, religion, sex, age, or national origin, in a manner that would deprive or tend to deprive any person of employment opportunities, or that would limit employment opportunities or otherwise adversely affect the status of an employee or of an applicant for employment because of race, creed, color, religion, sex, age or national origin.
>
> (3) Cause or attempt to cause an employer to violate this chapter.

[5] In full, 42 U.S.C. § 2003e-2 reads:

> It shall be an unlawful employment practice for a labor organization –
>
> (1) To exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
>
> (2) To limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (3) To cause or attempt to cause an employer to discriminate against an individual in violation of this section.

Holland, with the Union's consent, removed the case to this court on January 9, 2015 under 28 U.S.C. § 1441. (Docket No. 1.) The removal petition states that removal is proper under § 1441 because this court (1) has original jurisdiction over the Title VII claims (under 28 U.S.C. § 1331) and (2) supplemental jurisdiction over the remaining state law claims (under 28 U.S.C. § 1367). It makes no reference to the LMRA as a basis for original jurisdiction or removal.

Following removal, the Union filed an Answer to the Amended Complaint. (Docket No. 5.) The Union's Answer does not plead any affirmative defense relating to pre-emption or otherwise state that the plaintiffs' THRA claims against the Union are pre-empted by the LMRA. Holland also filed a post-removal Answer to the Amended Complaint (Docket No. 6), in which Holland states (as it did in its Answer to the original Complaint) that the plaintiffs' claims are preempted by the LMRA.

## IV.     The Plaintiffs' Motions

The plaintiffs, in an apparent effort to avoid litigating in federal court, now seek to reverse course and proceed in Tennessee state court. First, they have filed a Motion for Leave to Amend under Fed. R. Civ. P. 15(a). In the motion, they ask the court's permission to "delete" their Title VII claims by submitting a new pleading that does not include those claims. Second, they have filed a concurrent Motion to Remand, which contends that (a) removal of the Title VII claim would deprive the court of subject matter jurisdiction or demonstrate a defect in removal, and (b) because it lacks subject matter jurisdiction or because removal was defective, the court *must* remand the case under 28 U.S.C. § 1447(c).

The defendants do not oppose the Motion for Leave to Amend, provided that the court dismisses the Title VII claims with prejudice as a condition of granting the Rule 15(a) motion.

With respect to the Motion to Remand, Holland argues that "deleting" the Title VII claim after removal does not deprive this court of subject matter jurisdiction over the remaining claims, but rather leaves it to the court's discretion whether to exercise supplemental jurisdiction over those state law claims. Holland argues that the court should retain the case, so as not to reward the plaintiffs for forum-shopping. The Union also contends that, even if the plaintiffs withdraw their Title VII claim, the case still presents a federal question because the LMRA preempts the plaintiffs' THRA claims.

## ANALYSIS

### I.   Removal, Subject Matter Jurisdiction, and Remand

#### A.  Removal

Removal of cases from state to federal court is governed by 28 U.S.C. § 1441(a), which provides for removal of "any civil action brought in state court of which the district courts of the United States have original jurisdiction[.]" "The federal court's jurisdiction is determined at the time of removal, and subsequent events, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369 (6th Cir. 2007) (internal quotation omitted). Here, the court has original jurisdiction over the Title VII claim. Thus, regardless of this court's disposition of the Title VII claim following removal, removal under § 1441(a) was proper and there was no defect in the petition.

#### B.  Subject Matter Jurisdiction and Remand

In a case removed because of a federal question, a federal district court acquires subject matter jurisdiction over supplemental state law claims under 28 U.S.C. § 1367. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009). If the district court disposes of the federal

claim that formed the basis for removal, the district court is not divested of subject matter jurisdiction over the state law claims; instead, the court retains subject matter jurisdiction over those claims and, at its discretion under § 1367(c), can choose whether to continue exercising that jurisdiction. *See Carlsbad*, 556 U.S. at 639-641; *see also Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210-211 (6th Cir. 2004) (citing *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 758 (6th Cir. 2000)) (holding that, where removal was proper, district court had subject matter jurisdiction over state law claims following dismissal of federal claims, and remand was therefore a matter of discretion).[6]

The plaintiffs purport to seek remand under 28 U.S.C. § 1447(c), which authorizes remand of a case in two circumstances: (1) if, in the removal petition, there is "any defect other than lack of subject matter jurisdiction"; or (2) "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction[.]"  Neither of these grounds for removal are present.  The case was properly removed in light of the Title VII claim.  The court therefore acquired – and retains – subject matter jurisdiction over the plaintiffs' state law claims, regardless of the court's disposition of the Title VII claim (and the LMRA preemption argument).  Although § 1447 provides no basis for remand here, the court may, if it disposes of all federal claims, remand the case in the exercise of its discretion under § 1367(c).  *See Long*, 201 F.3d at 671 (finding that discretion to remand was incorporated into § 1367).

## II.     The Motion for Leave to Amend

---

[6] In *Carlsbad*, the Court indicated that, in light of its earlier holding concerning § 1447(c) in *Thermtron Prods, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), orders of remand under § 1367(c) are immediately reviewable on appeal, whereas orders of remand under § 1447(c) are not. Nevertheless, several members of the Court expressed concern with this distinction and all but invited future litigants to urge the Court to abrogate *Thermtron*.  *See Carlsbad*, 556 U.S. at 638 n."*" (majority), 642 (Stevens, J., concurring), and 642-43 (Scalia, J., concurring).

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court stated:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Id*. at 182 (internal citations omitted). Thus, leave should be given unless there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment. *Id*.; *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

Here, the plaintiffs move for leave to amend to "delete" the Title VII claims and to file a Second Amended Complaint that includes only the THRA claims. The defendants do not oppose the motion, provided that the court dismisses the Title VII claims with prejudice. The plaintiffs' Reply does not address the defendants' position that dismissal with prejudice is warranted.

The parties gloss over one procedural issue: whether a Rule 15(a) motion that purports to "delete" a claim thereby authorizes the court to *dismiss* the claim that will be omitted. Typically, a plaintiff who seeks to remove a claim from the case does so under Rule 41(a), by seeking the court's leave (if necessary, as would be the case here), to dismiss the claim from the case

voluntarily. Here, the plaintiffs' Rule 15 motion is tantamount to a Rule 41 motion in purpose and effect. Indeed, the plaintiffs do not argue that their motion precludes "dismissal" of the claims that they intend to withdraw from the case. As explained herein, dismissal of the Title VII claims also comports with the statutory text of 28 U.S.C. § 1367(c), which authorizes the court to decline to exercise supplemental jurisdiction over pendent state law claims, where "the district court has *dismissed* all claims over which it has original jurisdiction[.]" (emphasis added). Given that the plaintiffs have not argued otherwise, the court will dismiss their Title VII claims with prejudice as a condition of granting the Rule 15 motion, and the court will order the plaintiffs to file a Second Amended Complaint ("SAC") that includes only the THRA claims.

The refiling of a Second Amended Complaint ("SAC") will leave only state law claims pleaded under the THRA. Again, in a technical sense, the court could defer ruling on the Motion to Remand until the SAC is filed. However, neither party has requested deferral of the Motion to Remand pending the filing of the SAC, the remand motion is fully briefed, and nothing prevents the court from ruling on the merits of the motion at this stage. The court will therefore address the Motion to Remand in this opinion, although it will defer issuing a remand order in the case until the plaintiffs file a Second Amended Complaint.

Normally, at this point, the court would proceed to assess whether to exercise continuing supplemental jurisdiction over the THRA claims. However, because the Union argues that the case will still contain a federal claim despite removal of the Title VII claim, the court must address that argument first.

### III.   The LMRA Preemption Argument

#### A.  The Union's Position

The Union argues that the court should find that, even without a Title VII claim, this case

presents a federal question because the LMRA preempts the plaintiffs' THRA claims. Essentially, the Union argues that the court must continue to exercise jurisdiction over the case because it implicates a federal claim over which this court has original jurisdiction, albeit one with respect to which the Union likely waived its right to remove.[7] The parties have cited no authority relating to which of the parties (the Union or the plaintiffs) has the burden to demonstrate jurisdiction in the peculiar procedural posture presented in this case, wherein a defendant (1) is arguing post-removal that a state cause of action should be treated as a federal claim, but (2) did not assert that basis for original jurisdiction in the removal petition.

In the usual contexts in which challenges to the court's original subject matter jurisdiction over a case arise, the universal rule is that a party invoking a federal court's subject matter jurisdiction bears the burden to prove that jurisdiction exists. *See, e.g.*, *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 561 (1992) (in challenge to plaintiff's standing, plaintiff must show jurisdiction); *Williamson*, 481 F.3d at 375 (in challenge to removal premised on alleged diversity jurisdiction, removing party must prove jurisdiction); *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1061 (6th Cir. 2008) (where defendant removes on the basis that the plaintiff's state court complaint falls under the federal question jurisdiction of the district court, the burden is on the defendant to prove jurisdiction); *Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (where defendant contends that plaintiff's federal court complaint did not involve a federal question, burden is on plaintiff to show jurisdiction). Indeed, because federal courts are courts of limited jurisdiction,

---

[7] Again, the Union did not remove on this basis in response to the original Complaint, which asserted substantially the same allegations that the Union now claims support a finding of federal preemption of the THRA claims. Indeed, the removal petition referenced only the Title VII claims as a basis for original federal subject matter jurisdiction and for removal.

the law *presumes* that a cause of action lies outside this limited jurisdiction, and "[t]he burden of establishing to the contrary rests upon the party asserting jurisdiction." *Vander Beogh*, 772 F.3d at 1064. In light of these principles, the court finds that the burden is on the Union to show the presence of a federal question in this case.

The Union has premised its preemption argument only on the allegations set forth in the Amended Complaint. It has not filed a copy of its collective bargaining agreement (the "CBA") with Holland, nor has it otherwise identified (or relied upon) any specific provisions of the CBA. The court therefore must evaluate whether the Union has shown that the Amended Complaint allegations establish that the LMRA preempts the THRA claims.

### B. LMRA Preemption

Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that LMRA § 301 preempts state rules regarding the meaning of CBAs, explaining that "substantive principles of federal labor law must be paramount" when enforcing CBAs. *Watts v. United Parcel Serv.*, 701 F.3d 188, 191 (6th Cir. 2012) (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962)). From the Court's perspective, "[t]he interests in interpretative uniformity and predictability that require that labor-contract disputes be resolved by reference to the federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Watts*, 701 F.3d at 191 (quoting *Allis-Chalmers Corp. v. Lucek*, 471 U.S. 202, 211 (1985)). In other words, the animating purpose of § 301 preemption is to ensure that federal labor law uniformly prevails

over inconsistent interpretations of CBAs by state courts. *Watts*, 701 F.3d at 191.

In appropriate circumstances, § 301 "both preempts certain state-law contract claims and also confers federal jurisdiction over those claims[.]" *Paul v. Kaiser Foundation Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir. 2012). When resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor contract law. *Allis-Chalmers*, 471 U.S. at 220; *see also Decoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (stating that "section 301 preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms").

However, although the LMRA can preempt state law claims, not every dispute involving a CBA is preempted by § 301. *Watts*, 701 F.3d at 191. "As long as the state law claim can be resolved without interpreting the agreement itself, the claim is independent of the agreement for § 301 preemption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1988).

The Sixth Circuit employs a two-step test to determine whether a plaintiff's claims are preempted by § 301. *Paul*, 701 F.3d at 519. First, courts must determine whether resolving the state law claim would require interpretation of the terms of the labor contract. *Id.* If so, the claim is preempted. "The preemption question depends on whether the essence of a plaintiff's claim is 'inextricably intertwined' with interpretation of CBA terms or whether it is only 'tangentially related' to the CBA." *Powers v. Cottrell*, 728 F.3d 509, 516 (6th Cir. 2013) (quoting *Paul*, 701 F.3d at 522). Second, courts must ascertain whether the rights claimed by the plaintiff were created by the labor contract, or instead by state law. *Id.* If the rights were created by the labor contract, the claim is preempted. *Id.* If a state law claim fails *either* of these two

requirements, it is preempted by § 301.  *Id.*  On the other hand, "[i]f the right both is borne of state law and does not invoke contract interpretation, then there is no preemption."  *Decoe*, 32 F.3d at 216.

In applying this two-part inquiry, the Sixth Circuit has been careful to draw a distinction between the plaintiffs' ground for relief and a defendant's potential *defense* to that claim.  The thrust of these cases is that, where a defendant asserts the terms of a CBA as a defense to a plaintiffs' discrimination (or retaliation) claim that is otherwise independent of the CBA, the claim is not preempted.  *See, e.g.*, *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir. 1989) (*en banc*); *Paul*, 701 F.3d at 520-21; *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990) ("[A] defendant's reliance on a CBA term purely as a defense to a state law claim does not result in section 301 preemption."); *Welch v. Gen. Motors Corp., Buick Motors Div.*, 922 F.2d 287, 293 (6th Cir. 1990) ("While GM may have a defense based on the collective bargaining contract, the defense alone is not sufficient to permit removal.")  This approach is consistent with the Supreme Court's holding in *Caterpillar v. Williams*, 482 U.S. 386 (1987), in which the Court reasoned that "the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule – that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court."  *Id.* at 398-99.  "When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.  But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum which the

14

claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing." *Id.* at 399 (emphasis added). Indeed, even the fact that a defendant might ultimately prove that a plaintiff's claims are preempted does not establish that they are removable to federal court.

*Tisdale v. United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 25 F.3d 1308 (6th Cir. 1994).[8]

### C.  Application of the Sixth Circuit's Two-Factor Test for LMRA Preemption

In this case, the Union has not shown either (1) that the THRA claims would require interpretation of the terms of the CBA, or (2) that the rights claimed by the plaintiffs were created by the CBA, rather than by the THRA.

In this case, the Union has not shown that the plaintiffs' claims are inextricably intertwined with the interpretation of CBA terms. The Union has not identified any particular CBA terms that it believes are necessarily implicated by the plaintiff's theory of liability under the THRA. The Union's primary argument is that the plaintiffs' claims implicate the Union's duty of representation, which can be a basis for a finding of preemption. *See, e.g.*, *Welch*, 922 F.2d 294; *Maynard*, 773 F.2d 733 (6th Cir. 1985). However, these cases establish only that, when a plaintiff sues a Union for violating its duty of fair representation *to the plaintiff*, the claim is subject to preemption.

---

[8] As it relates to the court's original jurisdiction, the LMRA preemption basis for federal jurisdiction typically arises in the context of removal, where a plaintiff has pleaded only a state law claim. This case is atypical in that the LMRA preemption argument was *not* invoked as a basis for removal. Instead, it has been asserted for the first time following removal. The parties do not assert that this distinction should impact the court's analysis as to whether this case presents a federal question following removal. Indeed, "the scope of removal jurisdiction based on the existence of a federal question is identical to the scope of federal question jurisdiction under 28 U.S.C. § 1331." *Warthman*, 549 F.3d at 1061 (internal quotation and brackets omitted).

This would be an easy case to resolve if the plaintiffs were simply pursuing the Union for failing its duty of representation to them under the terms of the CBA, such as by failing to represent their own interests vis-à-vis Holland because of their race.  In that circumstance, the breach of the duty of representation would arise from the CBA.  *See, e.g.*, *Welch*, 922 F.2d at 289-90 (finding LMRA preemption of Michigan discrimination claims against a union, where plaintiff alleged that, in violation of the terms of the collective bargaining agreement, the union refused to assist plaintiff in protesting employer's decision to deny plaintiff from participating in an overtime equalization program).  However, what the plaintiffs actually allege is that the Union agreed with Holland to assist Holland in perpetuating a racially hostile work environment by prosecuting a grievance on behalf of *Hassell*, and that the Union did so with an unlawful intent.  The plaintiffs do not allege that the Union breached a CBA duty to *them* by representing Hassell.  The primary issue is the Union's motivation for its actions, which the plaintiffs claim was motivated by a purpose (the intent to assist Holland in discriminating or retaliating against the plaintiffs) unrelated to the Union's duty of fair representation owed to themselves or Hassell.  This type of claim, which focuses on whether the Union acted with an individuos discriminatory intent in violation of a duty imposed by statutory law – *i.e.*, a duty external to the CBA – is not preempted by (or otherwise displaced by) the LMRA.  *See, e.g.*, *Smolarek*, 879 F.2d at 1334 (finding state law disability discrimination claim not preempted, where the issue was whether plaintiff's disability motivated employer's adverse actions, rather than defendant's asserted explanation that the terms of a collective bargaining agreement motivated its decision); *Tisdale*, 25 F.3d at 1314 (state law race discrimination not preempted, where "defendant's motivation is the key factual issue"); *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989) (no preemption of state law disability discrimination claim, because "[a]ll the plaintiff has to allege

is that an action was taken against him because of a motive impermissible under the Act," and "[i]t is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did.") Of course, the Union is free to defend itself by arguing that it grieved on behalf of Hassell for genuine reasons or for contractually required reasons, such as its duty of fair representation to Hassel. The fact that the CBA may assist the Union's defense is insufficient to establish preemption. In sum, the plaintiffs can establish their claim without reference to the CBA.[9]

The Union also has not shown that the rights asserted by the plaintiffs derive from the CBA. The Union has an independent duty under the THRA not to assist employers in discriminating or retaliating against employees. That duty derives from Tennessee state law, not from the terms of the CBA. The plaintiffs do not invoke the CBA or its terms as a basis for their lawsuit against the Union. Furthermore, the Union has not identified any CBA terms under which it believes that plaintiffs' claims are subsumed.

Because neither factor for LMRA preemption is met, the court finds that the Union has not established that the plaintiffs' THRA claims are, in essence, federal claims that the LMRA subsumes. Therefore, the court will treat the plaintiffs' THRA claims as Tennessee law claims, thereby respecting the well-pleaded complaint rule.

The Sixth Circuit decision in *Tisdale* supports this court's decision. There, the plaintiffs were members of the Toledo-based "Local 699" branch of the International Plumbers and Pipefitters Union. *Id.* at 1309. They alleged that, when they sought to transfer to the "Local 704" branch in the Detroit area, the Local 704 denied them necessary residency requirement

---

[9] Conversely, and more to the point, the Union has not shown that the plaintiffs must rely on construction of the CBA's terms to support their THRA claims.

waivers that the Local 704 had granted to white members seeking a transfer.  *Id*. at 1309-10.  The

Pipefitters Union defended by contending that its constitution required residency for entry into a

local branch (which the plaintiffs were seeking) but contained no similar requirement that an

existing local union member be stripped of membership upon moving out of the local's

geographic area (which apparently was the case for the white employees at issue).  *Id.* at 1310.

The Sixth Circuit observed that the plaintiffs' complaint invoked only Michigan's civil rights

statute, alleged no federal injury, and asked for no federal remedy.  *Id.* at 1311.  The court

reasoned as follows:

> Had the plaintiffs brought a breach of contract action in state court alleging that
> the union had violated a provision in its constitution guaranteeing
> nondiscrimination, their claim properly understood would arguably have been
> removable because it would have been in an area occupied by federal to the
> exclusion of state law.  That claim would have centered on an interpretation of the
> union constitution and would therefore have arisen under federal law, even though
> pleaded as a state claim.  But plaintiffs actually alleged disparate treatment under
> a state civil rights statute, not breach of the union constitution.  As *Caterpillar*
> states, the fact that the *defendant* raises a federal preemption defense does not
> mean that this cause of action arises under federal law; nor does the fact that
> analysis of the union's preemption defense may require a court to interpret the
> union constitution.
>
> . . .
>
> Put in more fundamental terms, we do not believe that the instant case is within
> the area which Congress meant to occupy in the Taft-Hartley Act.  This is not
> fundamentally a *labor* case involving negotiated contractual terms, which is what
> § 301 addresses.  This is a *discrimination* case involving non-negotiable rights
> guaranteed by the State of Michigan.
>
> In fact, if any federal law were applicable here it would be not the Taft-Hartley
> Act [the LMRA] but Title VII of the Civil Rights Act of 1964, [] which forbids
> racial and other discrimination by employers and labor organizations.  Title VII
> specifically does not preempt state civil rights actions.  42 U.S.C. § 2000e-7.  It
> should be self-evident that if Congress did not preempt state civil rights actions by
> operation of federal civil rights law it could not have meant to do so through
> federal labor law.  As the Supreme Court has stated, "it would be inconsistent
> with congressional intent under [§ 301] to pre-empt state rules that proscribe

conduct, or establish rights and obligations, independent of a labor contract."
*Allis-Chalmers v. Lueck*, 471 U.S. at 212 [].

. . . [T]his case . . . does not arise under federal law – plaintiffs do not invoke
federal labor law, nor do they allege any injury which is within the area of labor
relations over which Congress and the courts have given federal institutions
exclusive jurisdiction.

*Id.* at 1311-1313.

Similarly, in *Smolarek*, the Sixth Circuit considered whether state law handicap

discrimination claims by two plaintiffs against an employer were preempted.  879 F.3d at  1328-

29.  In relevant part, plaintiff Fleming alleged that the employer violated a Michigan anti-

discrimination statute by failing to provide him with work consistent with his medical

restrictions and by effectively terminating him because of his disability.  *Id.*  The Sixth Circuit

observed that, to establish a discrimination claim, this plaintiff needed only to show that the

employer took an adverse action and that his disability motivated the employer.  *Id.* at 1334.  The

Sixth Circuit recognized that the defendant would likely argue that it based its actions on the

provisions of the labor agreement regarding reinstatement and accommodation.  *Id.*

Nevertheless, the Sixth Circuit found no basis for preemption, because it was "*not* necessary to

decide at the outset whether or not Chrysler's interpretation of the agreement is correct as a

matter of federal labor law.  The question is factual: What was Chrysler's motivation?"  *Id.*

(emphasis in original).  Thus, the state law discrimination claim against the employer was

sufficiently independent of the collective bargaining agreement to escape § 301 preemption.  *Id.*

Here, although the claims at issue are asserted against the Union (in addition to Holland), the

circumstances presented are otherwise analogous to *Smolarek*, because motivation independent

of the CBA appears to be the relevant factual consideration.

    **IV.**    **Section 1367 Analysis**

Having concluded that, upon withdrawal of the Title VII claim, this case does not involve a federal question, the court must next consider whether to exercise jurisdiction over the supplemental state law claims under § 1367(c).

Section 1367 provides that a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "The district court should consider such factors as comity, judicial economy, convenience, and fairness in deciding whether to exercise supplemental jurisdiction over pendent state law claims, as well as the avoidance of unnecessarily deciding state law." *Fossyl v. Milligan*, 317 F. App'x 467, 473 (6th Cir. 2009). If the balance of these factors indicates that a case properly belongs in state court, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

As a general matter, "[a] federal court that has dismissed a plaintiff's federal-law claims should ordinarily not reach the plaintiff's state law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("[R]esidual supplemental jurisdiction should be exercised sparingly, to avoid needless decisions of state law."); *Hankins v. The Gap., Inc.*, 84 F.3d 797, 803 (6th Cir. 1996); *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987). "Residual jurisdiction should be exercised only in cases where interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon*, 465 F.3d at 728. Accordingly, there is a "strong presumption" against the exercise of supplemental jurisdiction once all federal claims have been dismissed. *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011).

Holland points out that the Supreme Court has indicated that a district court may also consider whether a plaintiff has used "manipulative tactics" to defeat removal and secure a state forum, such as "simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case." *Carnegie-Mellon Univ.*, *v. Cohill*, 484 U.S. 343, 357 (1988). "If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." *Id*.

Here, prior to removal, the case had been litigated in state court for approximately a year, and the state court ruled on a dispositive motion under Tennessee law, held one or more discovery conferences, and entered a scheduling order. Also, in general, it is preferable to allow Tennessee courts to adjudicate Tennessee state law claims. The defendants have not identified any unfairness or inconvenience that would result from litigating in the Tennessee Circuit Court, which is located in the same city and county as this court. The general presumption in favor of remand applies.

As to the forum manipulation issue, it is readily apparent that the plaintiffs are withdrawing their federal claim in an effort to justify remand. However, this is only a weak factor in favor of denying remand, because the plaintiffs *immediately* sought to withdraw the claim upon removal. The only proceedings before this court concern the plaintiffs' effort to withdraw their Title VII claim (which the defendants do not oppose) and the plaintiffs' request to remand the case. The plaintiffs have brought their motion expeditiously and therefore have minimized prejudice to the defendants.

Holland cites to *Harper v. AutoAlliance* in support of its argument that this court should refuse to remand the plaintiffs' claims. 392 F.3d 195. In *Harper*, the Sixth Circuit affirmed the

district court's refusal to remand where (1) the case had been on the district court's docket for 11 months following removal, (2) the parties had completed discovery; (3) the plaintiff did not abandon his federal claim until he had filed an amended complaint before the district court; (4) the defendants filed motions for summary judgment and the motions were ripe; (5) the district court had made several substantive rulings, including the initial motion to remand, a motion for protective order, and the a motion to compel an independent medical examination; (6) the plaintiff dropped his Title VII claim only *after* the court denied his initial motion to remand; (7) the plaintiff proceeded with his remaining claims in the district court for almost six months more; and (8) only after discovery was complete, the dispositive motion deadline had passed, and the plaintiff was faced with dismissal of all his claims on summary judgment did he file a new motion to remand. *Id.* at 211-12. Under the circumstances, of which forum manipulation was but one factor, the Sixth Circuit held that it was not abuse of discretion for the district court to deny the motion to remand. *Id.* The circumstances here are entirely different: the plaintiffs have immediately moved to remand, they have not attempted to "sandbag" the defendants, neither this court nor the parties have substantially litigated before this court (aside from the motion to remand itself), and there is no indication that the plaintiffs are attempting to "pull the plug" at a late stage in the case to avoid an adverse decision from this court with respect to their THRA claims.[10]

Under the circumstances, the court will decline to exercise supplemental jurisdiction over the plaintiffs' THRA claims under § 1367(c). Therefore, once the plaintiffs file their Second Amended Complaint, the court will issue an order remanding the case to Tennessee state court.

---

[10] Indeed, these plaintiffs received a favorable decision from this very court in a bench trial of their original claims.

## CONCLUSION

For the reasons stated herein, the plaintiffs' motions will be granted, the Title VII claims will be dismissed with prejudice, and the case will, upon the filing of a Second Amended Complaint, be remanded to Tennessee state court.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge